THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALBA REYES | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 22 C 6157 |
| | ) | |
| v. | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| | ) | |
| WALMART INC. | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Walmart Inc.'s Motion for Summary Judgment. (Dkt. 43). In September 2020, Plaintiff Alba Reyes slipped and fell at a Walmart in Niles, Illinois. Reyes filed a negligence suit against Walmart in the Cook County Circuit Court seeking damages for personal injuries she suffered because of the accident. Walmart removed the proceeding to this Court. Now, Walmart moves for summary judgment claiming that Reyes presents no evidence of any liquid on Walmart's floor, which caused Reyes to slip; further, Walmart argues that it lacked notice of any substance on the floor, which would trigger liability. For the following reasons, the Court grants Walmart's Motion [43].

## BACKGROUND

Reyes slipped and fell at a Walmart store in Niles, Illinois. (Dkt. 1). Reyes claims that Walmart allowed the liquid to accumulate on its floor; the floor became wet and slippery, and this caused Reyes to slip and fall. (Dkt. 54 ¶¶ 6–7). Walmart denies these allegations. (*Id.* ¶ 8). If there was liquid, Walmart says, Reyes failed to properly observe her surroundings by failing to notice an obviously slippery floor. (*Id.* ¶ 9).

1

The undisputed facts leading up to Reyes's fall are as follows: On September 8, 2020, Reyes and husband went to Walmart to shop. (*Id.* ¶ 10). Before she slipped, Reyes had paid a cashier for the items she purchased. (*Id.* ¶ 11). The accident occurred three or four steps from the cashier's checkout lane where Reyes paid. (*Id.* ¶ 12). Neither Reyes nor her husband ever saw the liquid she alleges caused her to fall. (*Id.* ¶¶ 13–14). Reyes also never heard any Walmart employee talk about liquid on the floor and never saw any employee clean anything on the floor. (*Id.* ¶¶ 15–16).

Surveillance footage shows that Reyes fell near the cash registers and directly adjacent to the ice freezers. (*Id.* ¶ 20; Dkt. 49). There is no visible liquid on the floor in the video. (Dkt. 54 ¶ 21). In the two and half minutes leading up to Reyes's fall, approximately 12 other customers walked directly through the area in which Reyes fell without slipping. (*Id.* ¶ 22; Dkt. 49). The footage shows that Reyes slipped after one foot slid forward; she fell on her right knee. (*Id.* ¶ 30). Reyes alleges that she only felt the liquid substance, which she alleges caused her to slip, after she hit the floor. (*Id.* ¶ 33). Within 15 seconds of Reyes's fall, the footage shows an employee approach Reyes and inspect the floor around the space where she slipped. (*Id.* ¶¶ 53–54). Thereafter, another employee approaches; the first employee puts her hand out seemingly to signal to the approaching second employee not to walk where Reyes slipped. (*Id.* ¶ 56). The store's department manager did not witness Reyes fall and does not know if any other employee witnessed the fall. (*Id.* ¶¶ 25–26). Though Reyes testified that she slipped in water, according to the record, no one, including Reyes, ever saw any liquid. (*Id.* ¶ 49).

After Reyes fell, Devin Yarber, a Walmart assistant manager, who saw Reyes on the ground, approached Reyes. (Dkt. 54 ¶ 49; Dkt. 54-4, Exhibit B). According to Yarber, Reyes relayed to him via a translator that she had slipped and fallen on water. (*Id.*)

In September 2020, at this Walmart location, team lead employees would walk through the store every hour to an hour and a half to inspect the store and its main floors to ensure that everything was clean and organized. (Dkt. 54 ¶ 40). The front-end team lead was responsible for patrolling and inspecting the cash register area at the front of the store. (*Id.* ¶ 41). Cashier employees were also required to inspect or "zone" the area daily to make sure the area was clean. The policy and procedure requiring employees at the cash register to check their zone is a corporate procedure that does not differ from location to location. (*Id.* ¶ 42). More employees are scheduled to work at the store in the afternoon and evenings because the volume of sales and customer foot traffic is higher. (*Id.* ¶ 44). Walmart's policy for accidents is to fill out an incident report, collect statements from the individuals involved in the accident, collect photos, and secure security camera footage. (*Id.* ¶ 44).

Reyes filed suit against Walmart for premises liability (Count I) and negligence (Count II) in September 2022. (Dkt. 1 at 2). The case was removed to this Court in November 2022. (*Id.* at 1). Walmart now moves for summary judgment. (Dkt. 43).

## **LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court "consider[s] all of the evidence in the

record in the light most favorable to the non-moving party." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted). The Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

## **DISCUSSION**

Reyes brings claims under theories of premises liability and ordinary negligence. (Dkt. 1 at 5–10). The parties do not dispute that Walmart owed Reyes a duty to maintain its premises in a safe condition; rather, the issue is whether Reyes can establish that Walmart breached its duty.

### I.   Premises Liability

Walmart first moves for summary judgment on the premises liability claim. (Dkt. 44 at 4). Because Reyes's action is before the Court based on diversity jurisdiction, (Dkt. 1 ¶1), Illinois tort law governs. *See Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016). "A possessor of land is subject to liability for physical harm *caused* to his invitees by a condition on the land if, but only if, he knows *or* by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees . . . and fails to exercise reasonable care to protect them against the danger." *Madden v. Paschen,* N.E.2d 1203, 1213–14 (Ill. App. 2009) (emphasis added); *see also Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017) (underscoring plaintiff must show the dangerous condition caused the harm); *Turcios v. DeBruler Co.*, 2015 IL 117962, ¶ 23. Put differently, to maintain a premises liability claim, a plaintiff must demonstrate that the defendant knew about a condition on its premises

4

causing an "unreasonable risk of harm" to its customers, *or* that the defendant would have discovered such a condition by the exercise of reasonable care. *See, e.g., Gentry v. Shop'n Save Warehouse Foods, Inc.,* 708 F.Supp.2d 733, 736–37 (C.D.Ill.2010) ("The landowner must know of the condition or would have discovered the condition through the exercise of reasonable care.").

### a. Proximate Cause

Walmart first argues it cannot be held liable for Reyes's fall under a premises liability theory because "[t]here is no evidence of any liquid on Walmart's floor that [Reyes] slipped on." (Dkt. 44 at 5). Without evidence of liquid on the floor, Reyes's claim must fail because Walmart's negligence in maintaining the floor's condition could not have "caused" Reyes to slip; therefore, as Walmart sees it, the proximate cause element of Reyes's claim is missing.

Walmart has not met its burden to show that there is no genuine dispute as to whether Walmart proximately caused Reyes's injuries. To show proximate cause, Reyes cites the surveillance footage, which shows her foot slipping forward as she walked parallel to the registers at Walmart. (Dkt. 54 ¶ 30). Reyes alleges that she felt a liquid substance, which caused her to slip as she walked by the ice freezers at Walmart. (Dkt. 54 ¶ 31). At 2:25 on the surveillance footage, Reyes's foot slips forward, and she falls to the ground. (Dkt. 49). After the fall, Reyes's knee was in severe pain; she told an employee via a translator that she had slipped in water. (Dkt. 54-4, Devin Yarber's Witness Statement). Though Reyes presents no direct evidence of liquid on the ground, "a plaintiff need not present 'actual evidence . . . circumstantial evidence [is] enough to defeat summary judgement when that circumstantial evidence could lead to the probable inference that there was negligence.' " *Mladinov v. La Quinta Inns, Inc.*, No. 19-CV-03003, 2021 WL 2186179, at *7 (N.D. Ill. May 28, 2021) (citing *Heider v. DJG Pizza, Inc.*, 138 N.E.3d 934, 941 (Ill. App. Ct. 2019)) (cleaned up); *Pierce v. Chicago Rail Link, L.L.C.*, No. 03 C 7524, 2005 WL

5

599980, at *12 (N.D. Ill. Mar. 15, 2005) ("Even where the circumstances support more than one logical conclusion, circumstantial evidence is sufficient to establish proximate cause to overcome a motion for summary judgment as long as the inferences in question may reasonably be drawn from the evidence.") (citations omitted).

Citing *Kimbrough v. Jewel Companies, Inc.*, Walmart contends that Reyes's claim is based on speculation that liquid caused Reyes's fall. 416 N.E.2d 328 (Ill. App. Ct. 4th Dist. 1981). While *Kimbrough* stands for the legal proposition that where a plaintiff cannot show what condition caused her fall, summary judgment is proper, the facts in the instant case are distinguishable from those in *Kimbrough*. Unlike in *Kimbrough*, where the plaintiff repeatedly stated that she did not know why she fell, here, Reyes does the opposite: she alleges explicitly that she fell because of liquid on the ground, which she felt after she stepped in it. (Dkt. 54 ¶¶ 32–33). Drawing inferences in Reyes's favor, as the Court is required to do, this testimony along with the surveillance footage is sufficient to defeat Walmart's Motion as to the proximate cause issue. *Ferraro v. Hewlett–Packard Co.*, 721 F.3d 842, 847 (7th Cir. 2013).

### b. Constructive Notice

Walmart also contends that Reyes failed to establish either actual or constructive notice of liquid on the floor prior to Reyes's fall. (Dkt. 45 at 7). Under Illinois law, no premises liability attaches if the owner lacks actual or constructive knowledge of the alleged dangerous condition. *Barrios v. Fashion Gallery, Inc.*, 255 F. Supp. 3d 728, 731 (N.D. Ill. 2017); *Olivarius v. Tharaldson Prop. Mgmt., Inc.*, 695 F. Supp. 2d 824, 832 (N.D. Ill. 2010). Actual knowledge only exists "where there is evidence that the defendant or its employee had been notified of the dangerous condition" prior to the plaintiff's fall. *Haslett v. United Skates of Am., Inc.*, 136 N.E.3d

172, 185 (Ill. App. Ct. 2019). Reyes does not claim Walmart had actual notice of the condition, only that Walmart had constructive notice. (Dkt. 54 at 6).

A property owner "has constructive notice of all conditions discoverable by reasonable inspection of the premises." *Lombardo v. Reliance Elevator Co.*, 315 Ill. App.3d 111, 120 (1st Dist. 2000). "Constructive notice can be established under Illinois law by either presenting evidence that (1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care, or (2) the dangerous condition was part of a pattern of conduct or a recurring incident." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 651 (7th Cir. 2014). Here, Reyes claims the dangerous condition existed for enough time to put Walmart on constructive notice. (Dkt. 54 at 6).

When a plaintiff claims the defendant had constructive knowledge, "of critical importance is whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence should have been discovered." *Zuppardi*, 770 F.3d at 650 (cleaned up). Though there is no bright-line rule, the substance must have been present long enough so that in the exercise of ordinary care, Walmart would have discovered it. *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008); *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 651–52 (7th Cir. 2001).

Reyes's evidence is insufficient to show Walmart should have noticed the liquid where Reyes fell, exercising ordinary care. Reyes's evidentiary roadblock is that she builds her entire timeline of events using only the 3-minute Walmart surveillance footage. (Dkt. 54 at 6–8). Reyes claims that the liquid was present for at least that amount of time since there is no evidence that any customer dropped anything in the area during that time. (Dkt. 54 at 7; Dkt. 49). The footage, however, is grainy and from far away. (*See* Dkt. 49). Though it does not appear that any customer

dropped any liquids, there are other ways the liquid could have accumulated that a video camera could have missed, for example, if water leaked from the adjacent ice freezers. (Dkt. 49).

More importantly, even if it were true beyond any dispute that the liquid had been present before the footage began, this would still be an insufficient amount of time to put Walmart on constructive notice. In *Culli v. Marathon Petroleum Co.*, the Seventh Circuit underscored that, under Illinois law, if liquid could have accumulated even several minutes before a person slips, it is insufficient to put a business on constructive notice. 862 F.2d 119, 124 (7th Cir. 1988). Other courts have reached similar conclusions. *Willis v. Wal-Mart Stores, Inc.*, No. 20 C 4558, 2023 WL 3504920, at *4 (N.D. Ill. May 17, 2023) (determining that Walmart was not on constructive notice after plaintiff slipped on soap in a bathroom because there was no evidence of how long the soap had been on the floor) (citing Illinois law); *Hresil v. Sears, Roebuck & Co.*, 82 Ill. App. 3d 1000, 1002 (1980) (concluding that "ten minutes was an insufficient period of time to give [Sears] constructive notice" of a foreign substance); *Hayes v. Bailey*, 80 Ill. App. 3d 1027, 1030 (1980) (explaining that it is not proper to submit a case to a jury where a plaintiff slips if there is no evidence of how long a foreign substance was on the floor prior). There is too little evidence to suggest that the liquid was present for any more than the 3-minute video to establish the constructive notice element.

What's more, Reyes cites zero cases, which counsel a contrary conclusion. Instead, Reyes's points to Walmart's policies regarding inspecting areas of the store to argue, exercising ordinary care, an employee would have noticed the liquid. More associates were working at the time Reyes slipped because the afternoon rush draws more customers. (Dkt. 54 ¶ 43). Surveillance footage shows several employees in the vicinity where Reyes slipped, prior to her falling. (Dkt. 49).

8

Further, all Walmart employees are trained to always check their surroundings and make sure that nothing is on the floor. (Dkt. 54 ¶ 36).

While it is true that in a heavily trafficked area, Walmart's obligation to inspect the area is heightened, (Dkt. 54, Exhibit A at 30); *Peterson*, 241 F.3d at 604–05 (emphasizing that "[w]here customer traffic is heavy and the probability of a slip and fall therefore high . . . frequent and careful patrolling" is necessary), Reyes offers no witnesses that can even attest to a foreign substance on the floor where she slipped, let alone who allege that a substance had been there for a specific period. At least twelve customers, as well as three employees, walked through the area where Reyes slipped in the approximately two minutes before the incident. (*Id.*) Despite the myriad potential witnesses, no person testified to ever seeing any liquid—even after Reyes slipped.

The record here is like that of *Zuppardi v. Wal-Mart Stores, Inc.*, a case in which the Seventh Circuit found a Walmart was not on constructive notice after a woman slipped in a puddle of water, while shopping. 770 F.3d at 646. No witness saw the water accumulate or any water tracks in the surrounding area. *Id.* at 646–47. The woman's main evidence to establish how long the water had been on the ground was that she had gone to get a shopping cart and had not seen anyone walk through that part of the store during that period, which was a few minutes. *Id.* at 651. Therefore, as she saw it, no one could have spilled the water during that time. *Id.* Though the Court agreed with the woman that the water had been on the ground there for at least a few minutes prior to her slipping and that the area was "frequently utilized by employees," the Court nonetheless determined this was insufficient time to put the store on notice of the dangerous condition. *Id.* at 651. The Court added that because the area was so heavily trafficked, this made it even more likely that the puddle had been there for a short time because no one customer alerted an employee of the spilled water.

Here, like in *Zuppardi*, Reyes can show only that the substance had been present for at most a few minutes before her fall. (Dkt 54 at 8). Like the woman in that case who did not see the water accumulate, Reyes did not see any liquid at any point before or after she slipped. (*Id.*) Additionally, like in *Zuppardi*, this was a heavily trafficked area, yet the record contains no witnesses who can attest to there being liquid on the ground where Reyes slipped and fell. (*See generally Id.*).

The Court of Appeals' recent decision in *Cruz v. Costco Wholesale Corp.* also adds support to the conclusion that Reyes has not presented a genuine dispute as to whether Walmart was on constructive notice of the alleged spill. No. 24-1843, 2025 WL 1153805, at *1 (7th Cir. Apr. 21, 2025). In *Cruz*, a woman slipped on a fruit smoothie while shopping at Costco. No. 24-1843, 2025 WL 1153805, at *2. The Court did a close read of *Zuppardi*, determining that the facts in *Cruz* were distinguishable; unlike in *Zuppardi*, where the Court affirmed summary judgment, in *Cruz*, the Court reversed the district court's grant of summary judgment. *Id.* The Court clarified that the determinative evidentiary fact that the defendant Costco store was plausibly on constructive notice of a fruit smoothie puddle on the ground was a 28-minute video of the scene before and after the fall. *Id.* at *3. The Court expalined:

> The 28 minutes of video evidence make this case different from *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644 (7th Cir. 2014), . . . In *Zuppardi*, the plaintiff testified that she "did not see anyone in the area prior to the fall despite having walked" straight down a store aisle into the danger zone. 770 F.3d at 651. We affirmed summary judgment for the defendant in that case because the testimony established "only that the spill had occurred at least a few minutes before the accident, and there is no basis in the record for estimating how much earlier the spill might have taken place." *Id.* The key point was that the evidence in *Zuppardi* affirmatively established only that the spill could have been on the floor for only a few minutes (the time from when the dangerous area came into plaintiff's view until she arrived at the end of the aisle). *See also Hresil v. Sears, Roebuck & Co.*, 82 Ill. App. 3d 1000, 1002, 38 Ill.

> Dec. 447, 403 N.E.2d 678, 679–80 (1980) (affirming directed verdict for defendant when plaintiff observed dangerous area for just ten minutes before falling).

*Cruz*, No. 24-1843, 2025 WL 1153805, at *3. The Court concluded that "the surveillance video, viewed in the light most favorable to Cruz, would allow a reasonable juror to find that the spill must have taken place at least 28 minutes before Cruz's fall." *Id.*

Unlike in *Cruz*, where the 28-minute surveillance footage raised questions about when the spill occurred (the video shows no strong evidence of the spill occurring during that span), here, Reyes presents only three minutes of footage. *Id.* at 2; (Dkt. 49). This makes the instant case more like *Zuppardi* than *Cruz*. While Reyes presents evidence, which "would allow a reasonable juror to find that the spill must have taken place at least" *three minutes* before she fell, this simply is not enough time, without additional evidence, to raise a genuine dispute over whether Walmart was on constructive notice of the liquid. *Cruz*, No. 24-1843, 2025 WL 1153805, at *3. Walmart has, thus, met its burden of showing there is no genuine dispute as to whether it was on constructive notice of a dangerous condition. Absent such a dispute, even drawing all reasonable inferences in Reyes's favor, a jury could not find in favor of Reyes.

Accordingly, the Court grants Walmart's Motion as to the premises liability claim.

### II. Negligence

Reyes relies on the same arguments to prove both negligence and premises liability. (*See generally* Dkt. 54). Unlike premises liability, notice is not required for an ordinary negligence claim. *See, e.g.*, *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 715 (1998) ("a plaintiff does not need to prove actual or constructive notice when she can show the substance was placed on the premises through the defendant's negligence.") To establish negligence in Illinois, a plaintiff must show that a defendant owed a duty of care, that the duty was breached, and that the breach

11

caused the injuries. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. The foregoing elements of negligence liability in Illinois are not to be treated as factors, and Reyes would have to prove all of them at a trial in this matter; accordingly, on summary judgment, Walmart prevails if it shows even that Reyes cannot prevail on any one of the elements. *Keedi v. Menard, Inc.*, No. 20 C 50375, 2021 WL 5759272, at *2 (N.D. Ill. Dec. 3, 2021).

There is no question that Walmart owed a duty to Reyes; the issue is whether it breached that duty. "In the case of slip and fall accidents in stores, due care requires the storeowner to keep the floor reasonably safe for customers by cleaning it frequently and by directing its employees to do a certain amount of patrolling of the aisles with their eyes directed at the floor." *Torrez v. TGI Friday's, Inc.*, 509 F.3d 808, 810 (7th Cir. 2007).

Reyes's negligence claim fails because there is no evidence that Walmart breached a duty by failing to clean up the liquid Reyes claims she slipped on. Reyes simply claims that had a Walmart employee inspected the area properly, he would have noticed the liquid and cleaned it. (Dkt. 54 at 8). The problem with this argument is that there is only limited, circumstantial evidence that there was ever liquid in the area where Reyes slipped in the first place. And Reyes presents no evidence of any kind that there was any problem with Walmart's inspection policies—other the fact that she slipped on *something*. In fact, Reyes presents testimony from Walmart employees, which suggest Walmart's policy was to diligently look out for spills, including staffing more employees in high traffic areas of the store. (Dkt. 54 ¶¶ 41–44). Aside from Reyes's own testimony and the footage of her fall, there is limited evidence that there ever was liquid on the ground, let alone that Walmart unreasonably failed to clean it up. (*See generally* Dkt. 54).

Because Reyes presents no evidence that Walmart breached its duty of care, the Court grants Walmart's summary judgment motion as to Reyes's ordinary negligence claim. *See Raube*

*v. Am. Airlines, Inc.*, 539 F. Supp. 2d 1028, 1036 (N.D. Ill. 2008) (granting summary judgment was proper because plaintiff offered no evidence that defendant breached its duty of care).

## CONCLUSION

For the forgoing reasons, the Court grants Walmart's Motion for Summary Judgment [43].

_____
Virginia M. Kendall
United States District Judge

Date: June 11, 2025